MISSOURI STATE LIFE INSURANCE COMPANY v. MILLER.

Opinion delivered April 7, 1924.

1. INSURANCE—DUTY TO CONTINUE POLICY IN FORCE.—Where, under the terms of a life insurance policy, it was the duty of the insurer to continue the insurance, on a failure of insured to pay any premium, so long as there were available funds for that purpose, and under the evidence it appeared that, from the time insured made default in payment of his premium until his death; there was sufficient loan value on his policy to extend the insurance until after the insured's death, there was no duty resting on insured to make application for a loan, in order to get the benefit of such insurance.

2. CONTRACTS—FORFEITURES.—Forfeitures are not favored, and should not be declared except where there is the clearest evidence to justify it.

Appeal from Crittenden Circuit Court, First Division; *W. W. Bandy*, Judge; affirmed.

*Jourdan, Rassieur & Pierce, L. P. Berry* and *R. V. Wheeler*, for appellant.

This is simply one of the unfortunate cases where the insured realized on his insurance in his lifetime by borrowing the full legal reserve on the policy, and, when overtaken by adversity, he was unable to carry the insurance further, and death removed him before he had done the things required of him. *Patterson* v. *Equitable Life Assurance Society*, 112 Ark. 171, 165 S. W. 454, is an almost identical case. For an exactly parallel case see 109 S. E. 919 (Ga.). The facts are undisputed, and, under the decisions of this court, there was no payment of the premium. 75 Ark. 556, 88 S. W. 305; 28 Ark. 166; 48 Ark. 267; 3 S. W. 181; 111 Ark. 529, 164 S. W. 283. There can be no waiver of the requirements of prompt payment of this premium, as no act of the company or any of its agents to any such state of facts appear; on the contrary, Miller was notified of the consequences which would attend upon nonpayment. He was advised, before he gave the two checks to the agent in Memphis, that the policy would be void if those checks were not paid. The court's finding "that the retention of the checks and the fact that decedent had sufficient funds in the Crittenden County Bank & Trust Company shortly after the checks were presented for payment and refused because of 'insufficient funds' was a waiver of the clause of the policy sued on providing for the lapse of the policy unless premiums are paid in thirty days after due," was a finding of waiver by implication, and was contrary to the facts in evidence, and erroneous. 104 Ark. 288, 148 S. W. 1019. The second finding by the court was erroneous because, (1) the loan value of the policy was only $697; (2) the company could only make a loan on a policy after application therefor; (3) the company could not accept partial payments of premiums, and, according to the court's findings, there was only a difference of $73, while the annual premium due was $79.45; and (4)

the finding does not take into account any interest on the loan previously procured by the decedent. The loan value, after the expiration of the thirteenth policy year, *i. e.,* after September 2, 1921, presupposes the payment of the premium due on that date, before the advanced loan value ($770) would have been available. 130 Ark. 419, 197 S. W. 700.

*W. B. Scott,* for appellee.

1. The annual premium on a policy of insurance is not a debt of the insured, and its settlement is not governed by the strict rule controlling in the payment of debts. Hence the cases relied on by appellant on the question of payment by check have no application. 150 Pac. 190; 6 Ga. App. 721; 65 S. E. 714; 114 Ky. 611, 71 S. W. 650; 20 Ky. L. Rep. 441, 46 S. W. 518. See also 14 R. C. L. 963, § 136; L. R. A., 1916A, 669-682; 2 Sask. L. R., 355. In the light of these authorities, it appears that, a check having been made and delivered to an authorized agent of the company, and a receipt having been given for the payment of the premium, even though the receipt contained a provision that the check should not be considered as payment of the premium until the check was actually paid, yet, if the company retained the check after its nonpayment on account of insufficient funds, and the insured thereafter deposited sufficient funds in the bank to pay the check, the company was estopped to declare a forfeiture for nonpayment. See also 68 L. R. A. 87, 63 C. C. A. 130, 128 Fed. 383.

2. With reference to the second finding, the company's own construction as indicated by its offer to lend the insured the additional $70, is sufficient evidence that there was an additional value available on and after September 3, 1921. The Fry case, 130 Ark. 419, relied on by appellant, is not in point.

WOOD, J. This is an action by the appellee against the appellant to recover on a life insurance policy issued by the appellant insuring the life of H. C. Miller in the sum of $2,500 for the benefit of his wife, Maudie L. Miller, the appellee. The complaint alleged the issuance of

the policy, the death of Miller on February 8, 1922, the payment of the premiums, and the compliance with the terms of the policy on the part of the insured and the appellee. The answer admitted the issuance of the policy, but denied that the premium due April 3, 1921, was paid, and alleged that on April 5, 1921, a loan of $697 was made to Miller, which loan equaled the reserve or cash value thereof, and that the policy, by its terms, became null and void on October 4, 1921, and therefore was not in effect when Miller died. The cause, by consent, was submitted to the court sitting as a jury, on an agreed statement of facts, which it is unnecessary to set forth at length, but the material parts of which will be stated.

The policy was issued September 3, 1908. The completion of the first policy year would have been September 2, 1909, and the completion of the 13th policy year would have been September 2, 1921. The policy provided for the annual payment of premiums. If any premium was not paid when due, the policy was to continue in force for a term of one month, and, after the second year, if the premium was not paid within the period of grace, the insurance was to continue automatically, as term insurance, for the face value thereof, and the total term of continued insurance, including the period of grace granted at the completion of any policy year, was set forth in a table. At the completion of the thirteenth policy year the term of continued insurance was 23 years and 11 months, representing a paid-up life policy of $1,575 with a cash value of $697.50. The cash value of the policy, at the completion of the second policy year and thereafter, was the full reserve thereon, and at any time was equal to, or exceeded, the net value of the corresponding non-forfeiture benefit thereunder. If there was any indebtedness to the company the cash value thereof was to be diminished thereby and the amount of paid-up life policy reduced in the ratio of indebtedness to the cash value. The policy provided for annual payment of premiums, with a thirty-day period of

grace, and, in case of failure of premiums, for reinstate-
ment as of the due date, upon satisfactory evidence of
insurability, upon the payment of all arrears of premi-
ums, indebtedness, etc.   There was a provision author-
izing the insured, after the first year, to borrow money,
within the loan value specified in the table, on the secur-
ity of the policy.   According to this table the loan value,
after the expiration of the 12th policy year, was $697.50.
All premiums had been paid up to September 3, 1921, and
it was agreed that the policy was in full force at that
date.   On that day the premium became due and had a
period of grace of thirty-one days.

On the 5th of April, 1921, the insured borrowed on
his policy the sum of $697.   The interest on the
loan was payable in advance upon the due date of the
premium.   On the 28th of September, 1921, the insured
delivered to the general agent of appellant at Memphis,
Tennessee, two checks, which, in the aggregate, equaled
the premium and interest due on the policy, and which,
if cashed, would keep the policy in force until September
3, 1922.   Upon delivery of the checks, the appellant gave
the insured receipts for same, which receipts recite as
follows: "Received payment   described below; Policy
No. 36858; Annual Premium $79.45; due date of prem-
ium, 3rd Sept., 1921.   On the life of Hezrika Miller, Tur-
rell, Ark.   Not valid unless countersigned by P. M.
Harper, General Agent, 616 Union & Planters Bank
Bldg., Memphis, Tenn.   James   J.   Parks, Secretary.
Countersigned, 9/30/21 by P. M. Harper, Gen'l. Agent.
Any check, bank draft or express money order given in
exchange for this receipt will not be considered payment
of the premium for which this receipt is issued unless
such check, draft or money order is actually paid to the
company in cash on presentment in due course of busi-
ness."

The checks were indorsed by Harper, general agent
of appellant at Memphis, Tennessee, and deposited in the
National City Bank of Memphis for collection, the
proceeds to be placed to the credit of the appellant.   The

National City Bank, through its cashier, indorsed the checks, "Pay to the order of any bank, banker, or trust company, prior indorsements guaranteed, October 1, 1921." These checks were presented in the ordinary course of business through the Memphis branch of the Federal Reserve Bank of St. Louis, to the Crittenden County Bank & Trust Company, at Marion, Arkansas. They were also indorsed, "Pay to any bank, banker, or trust-company, prior indorsements guaranteed, October 2, 1921," by the Memphis branch of the Federal Reserve Bank of St. Louis, and were presented to the Crittenden County Bank & Trust Company, at Marion, Arkansas, and by that bank dishonored and returned, marked "insufficient funds," to the Memphis branch, which, in the ordinary course, returned them to the National City Bank, which bank charged the amount of the checks to the account of the appellant, on October 6, 1921, and on that day wrote appellant to that effect and returned to it the checks. The appellant retained possession of the checks and made no further effort to present them to the Crittenden County Bank & Trust Company, or in any other manner to collect the same. The St. Louis office of the appellant was notified of the nonpayment of the checks on October 8, 1921, and it wrote the insured the following letter: "We exceedingly regret to advise you that your checks for $79.45 and $41.82, respectively, dated September 29, 1921, drawn on the Crittenden County Bank & Trust Company, Marion, Arkansas, tendered in settlement of annual premium, also loan interest, due September 3, 1921, under the above numbered policy, have been returned for nonpayment; reason, 'insufficient funds.' In view of the fact that the grace period of thirty-one days automatically allowed in which to make settlement under said policy has long expired, and as a result of the return of the checks given in settlement of premium and loan interest referred to above, policy has therefore entered into and now stands in a lapsed condition. In order to revive the same, reinstatement will be necessary, and are accordingly inclos-

ing blank application for that purpose, which we will thank you to complete, sign in the presence of witness, and return to this office, together with bank draft, postal or express money order in the sum of $121.27 covering arrears. Upon receipt of the same, application for reinstatement will be referred to our medical department for their examination, and, if approved by them, proper acknowledgment will be made. Undoubtedly the lapsing of this insurance was the loss of a very valuable asset, and trust there will be no delay incurred on your part in taking necessary steps toward reviving the same. Assuring you that we stand ready at all times to render any assistance possible in this connection, we beg to remain," etc.

After October 8, 1921, the appellant wrote Miller, the insured, several letters, calling his attention to the nonpayment of the premium and soliciting him to pay the same and to reinstate his policy. On the 18th of December, 1921, Miller wrote to the appellant, in which letter he stated that he had received appellant's letter in regard to his policy, and further stating that he did not want his policy to remain in its lapsed condition; that he was not able to take care of all the premiums and interest, and requested the appellant to help him carry over the balance until the next premium date. In answer to this letter, the appellant wrote Miller several letters, soliciting reinstatement by him and telling him that, upon part payment of the premium, the company would carry the remainder. Appellant had written Miller on the due date of the premium, September 3, 1921, that, unless the premium and interest were paid within thirty days, the policy would lapse, and specified the amount of interest due on the loan. The insured made no further effort to pay the premiums and interest due September 3, 1921, except the giving of the checks, as above specified. The insured carried an account in the Crittenden County Bank & Trust Company, which account showed that from September 1, 1921, to February 8, 1922, he had more than sufficient money on deposit to pay the premiums and

interest, except prior to September 9, 1921, and from September 29, 1921, to October 10, 1921; from October 24, 1921, to November 2, 1921, and from November 28 to December 6, 1921, and from January 23 to January 26, 1922.

If the insured was entitled to extended insurance, the premium for such insurance was $0.058 per day on the face value of the policy. The trial court made the following findings of fact;

"1. The court finds that retention of the checks and the fact that decedent had sufficient funds in the Crittenden County Bank & Trust Company, shortly after the checks were presented for payment and refused because of 'insufficient funds,' was a waiver of the clause of the policy sued on, providing for the lapse of the policy unless premiums are paid in thirty days after due.

"2. The court further finds that the policy at the end of the year ending September 3, 1921, had a loan value of $770, and the difference between that amount and the amount borrowed, which was $697, should have been applied by the defendant in the payment of the premium check given."

Thereupon the court deducted from the face of the policy the loan for $697 and the amount of the two checks, and rendered judgment in favor of the appellee in the sum of $1,640.75, from which is this appeal.

It will be observed that the insured had paid twelve annual premiums on his policy from September 3, 1908, to September 3, 1920, inclusive. The 13th policy year extended from September 3, 1920, to and including September 2, 1921, and, after the expiration of the period beginning September 3, 1920, to and including September 2, 1921, would be "after the expiration of the 13th policy year." On page 33 of the transcript there is a table headed "Table of Non-Forfeiture Values," which places the cash value of the policy at the completion of the 13th policy year at $697.50. But on page 38 of the transcript is a table entitled "Table of Loan Values," and this table

recites that "after the expiration of the 13th policy year
the loan value of the policy was $770." The court found
that the policy, at the end of the year ending September
3, 1921, had a loan value of $770. The premium due
September 3, 1920, was paid. This kept the policy in
force until the expiration of the 13th policy year, as
above stated. It therefore appears that on September
3, 1921, the appellee's policy had a loan value of $770.
It appears from these tables that there is a difference
between non-forfeiture values and the loan values, as the
non-forfeiture value, at the completion or after the expi-
ration of the 13th policy year, was $697.50, while the loan
value at the completion or after the expiration of the
13th policy year was $770. The finding of the court was
therefore correct according to the loan value as set forth
in that table. The court found that there was a differ-
ence between the loan value and the amount which the
insured had borrowed of the appellant, amounting to
$79, and held that such amount should have been applied
by the appellant on September 3, 1921, in order to pre-
vent a forfeiture of the policy. The court was correct,
under the facts of this case, in so holding. After the
days of grace had expired, and after the appellant had
notified the insured that his checks given to pay the pre-
mium had been dishonored, they further wrote him sev-
eral letters in which they reminded him that his policy
was in a lapsed condition, and urged him to have the
same reinstated. Among these letters was one dated
December 16, 1921, in which appellant stated that the
insured had not favored them with a remittance of
$121.27 and had not made an application for reinstate-
ment. In this letter the appellant informed the insured
that, if his financial condition rendered it impossible for
him to make a full cash settlement of the amount stated,
appellant would be glad if he would advise the appellant
"in just what way settlement could be made conven-
iently," and concluded by saying that the company was
willing to assist him in every way possible, and asking
him to let the company know as to what could be done

towards placing his policy in force. The insured answered this letter December 18, 1921, stating that he did not want his policy to stay in the present lapsed condition, but that he was not able to take care of all the premiums and interest, and asking appellant how it could help him carry over the balance until the next premium date. Appellant answered this letter December 27, 1921, and, among other things, said: ''We are quite sure that you appreciate the value of this insurance and that you have every intention of again placing this policy in full force and effect, if possible, and we are therefore only too glad to offer you the following proposition: If you will kindly sign the inclosed note extension agreement for $70 due March 3, 1921, and return it to this office, with a remittance of $51.27 and a satisfactory application for reinstatement, we will be in a position to immediately consider the reviving of this insurance. Of your remittance of $51.27, $9.45 will be applied in part payment of the past due premium, and the balance in payment of the past due loan interest. We are very anxious to see this policy reinstated at the earliest date possible, and sincerely hope that this arrangement will meet with your entire approval. May we expect to hear from you in this connection in the very near future? Yours faithfully,'' etc.

The insured died (February 8, 1922) about forty days after receiving the last letter, without answering same.

Now it was the contention of the appellee that the insured, on September 3, 1921, was entitled, under the terms of the policy, to borrow of the appellee $770, the loan value of the policy at that time. On the other hand, the appellant contends that the policy at that time had no loan value because the premium due September 3, 1921, had not been paid, and that therefore the loan value of the policy was not available. To sustain this contention appellant relies upon the case of *Mo. State Life Ins. Co.* v. *Fry,* 130 Ark. 419. While the policy in that case was precisely similar to the policy under review as to

extended term insurance, non-forfeiture values and loan values, yet the facts of that case clearly distinguish it from the case at bar. In that case Fry made an application to borrow enough money on his policy to pay the entire premium for the current year, and was unwilling to borrow less. In that case we said: ''The increased loan value would not have been available until the policy holder, Fry, had paid the premium on February 2, 1916, for the current year. This he never did; the increased loan value, had it been available, was only sufficient in amount to pay the interest on the loan and to pay three months' premiums. Fry never made application to borrow this amount, nor had he made application, in accordance with the terms of the contract, to pay the premium quarterly instead of annually. His failure in these respects clearly prevented his beneficiary from claiming an automatic extension or continuation of the policy beyond the period of grace provided in the contract.''

In the case at bar, the above correspondence shows clearly, at least the trial court was justified in finding therefrom, that the appellant, as late as December 27, 1921 (two months after the period of grace had expired), offered to loan the insured $70. The letters of appellant to the insured showed clearly that appellant interpreted the policy to mean that the loan value of the policy in excess of the loan to the insured was available to the insured if he desired to borrow that sum. It is not reasonable to conclude that the appellant would have offered to loan the insured $70 on his policy if the policy did not have a loan value equal to that sum. It would not have been just to other policy-holders for appellant to have loaned the insured $70 that was not secured by accrued loan values under the policy. If this available loan value of $70 had been applied by appellant to the payment of term insurance, under the provision of the policy, it would have entitled the insured to extended term insurance at a premium rate of $0.058 per day. This available loan value of $70 on September 3, 1921, would have paid the interest then due, of $41.82, leaving a balance of

$28.18 to be applied for term insurance at the premium rate of $0.058. In other words, the trial court was justified in finding, from the appellant's letters, that the insured had an available loan value in the hands of the appellant, which, if applied by appellant for the payment of term insurance, would have been more than sufficient, after paying the interest due on the loan, to have paid the premium on term insurance for the entire year, which would have carried it beyond the date of the death of the insured.

There were clauses in the policy, set out in the agreed statement of facts, which made it the duty of the appellant, having available funds for that purpose, to have adjusted the values and continued the insurance as indicated. This appellant could and should have done. Under the provisions in the policy, the insurance automatically continued if there were any available funds for that purpose, and no duty rested upon the insured to make application for a loan in order to get the benefit of the term insurance provided for in the policy. When the case at bar is considered in the light of the facts as found by the trial court, sustained by abundant evidence, that there was an available loan value on September 3, 1921, sufficient to pay the interest due and extend the term insurance until after the insured's death, then it is readily differentiated from the case of *Mo. Life Ins. Co.* v. *Fry, supra,* upon which appellant, on this point, relies, and is in harmony with that case.

Forfeitures are not favored, but, on the contrary, are odious in law, and should not be declared except where there is the clearest evidence to justify it. The evidence here is to the contrary. The conclusion thus reached makes it unnecessary to discuss the other issue of whether or not there was a waiver on the part of appellant by never returning the checks given by the insured.

The judgment of the trial court is correct, and it is therefore affirmed.