AMERICAN INSURANCE COMPANY *v.* AUSTIN.

Opinion delivered December 3, 1928.

*Lewis R. Featherstone* and *McRae & Tompkins,* for appellant.

*U. A. Gentry, Randolph P. Hamby* and *Coleman & Riddick,* for appellee.

McHANEY, J. This is an action upon a fire insurance policy issued by appellant to appellee, dated the 15th day of February, 1926, insuring appellee's residence in the sum of $1,500 and his personal property located therein in the sum of $500, for a period of five years from the 13th day of February, 1926, to the 13th day of February, 1931, for the total premium of $162, payable $32.40 cash with the application, and $32.40 payable on the first day of February each and every year thereafter, for which a note was executed in the total sum of $129.60.

Appellant's local agent at Prescott, Arkansas, took appellee's application for the policy on the 12th day of February, 1926, and received the first year's premium

therefor on said date, together with the note for the sum aforesaid, payable as stated, and forwarded same to appellant's general agent at Memphis, Tennessee. The policy issued contained the following provisions:

"In consideration of $32.40 paid and the payment of installments when |due on an installment note of $129.60 due and payable as follows: $32.40 on the 1st day of each February, 1927, 1928, 1929 and 1930 respectively, does insure," etc. * * * "No agent or employee of this company, or other person or persons, except an officer, or the Southern Farm Department manager, in writing, shall have power or authority to waive or alter any of the terms and conditions of this policy. * * * It is understood and expressly agreed that the company shall not be liable for any loss or damage that may occur to any property herein mentioned while any installment of the installment note given for premiums on this policy remains past due and unpaid," etc.

The installment note contained this provision: "And it is hereby agreed that, in case of nonpayment of either of the installments herein mentioned at maturity, this company shall not be liable for loss during such default, and the policy for which this note is given shall lapse until payment is made to the company at Memphis, Tennessee."

The policy contained this further provision: "This policy shall not be valid until countersigned by the duly authorized agent." It was countersigned by the agent at Prescott, Arkansas, but the date thereof is not definitely established by the evidence. The counter-signature bore the date of February 15, 1926, but the proof showed that this date was put on the policy in the Memphis office. The agent at Prescott was not able to state the definite date it was countersigned. The uncontradicted proof shows that it was not received by appellee until February 22, the policy being mailed him from Prescott, to his postoffice address at Drab, Arkansas, about twelve miles from Prescott, and would, if delivered in ordinary course, have reached appellee the day following its mailing.

The first installment on the note became due, according to the terms of the note, on February 1, 1927, and was not paid when due, and on the 16th of said month a fire occurred which totally destroyed appellee's property. He then called upon appellant's agent in Prescott, and advised him of the loss, delivered him the policy, and the agent notified appellant's general agent at Memphis, who declined to recognize the claim and to pay the loss, for the reason that said installment on the note had not been paid. This was within the time allowed appellee in which to make proof of loss. The case was submitted to the jury, under instructions authorizing a recovery by appellee if they should find that appellant waived proof of loss by denying liability within the time, and that the loss occurred within one year from the date said policy was countersigned by the local agent at Prescott, Arkansas, and that appellee had paid one year's premium on said policy; otherwise they were to find for the defendant. There was a verdict and judgment for appellee in the sum of $2,000 at 6 per cent. interest from May 18, 1927, 12 per cent. penalty, and $250 attorney's fee.

Appellant seeks to reverse the judgment on two grounds: First, that the policy was suspended for failure to pay the installment due on premium note before the loss occurred; and second, that the failure to furnish proof of loss avoided the policy.

It will not become necessary to decide the second proposition above stated, in view of the disposition we make of the first. The question is, did the failure of appellee to pay the installment of $32.40 on February 1, 1927, suspend the operation of the policy until it was paid, and, not having been paid prior to the loss, relieve appellant of liability? It is true that there is a slight conflict between that provision in the policy providing that appellant insured the property of appellee "for the term of five years from the 13th day of February, 1926, to the 13th day of February, 1931," and the other provision in the policy that "this policy shall not be valid until countersigned by the duly authorized agent." The

application was taken on the 12th day of February, mailed to the general agent in Memphis, Tennessee, who issued the policy, dating it the 13th day of February, and also put in the date of the counter-signature as of the 15th, assuming, no doubt, that it would take until the 15th for it to reach the local agent in Prescott, and be counter-signed in the ordinary course of business, as the 13th was on Saturday. While the local agent at Prescott did not remember the actual date of countersigning the policy, it is quite probable that it may have been counter-signed on the 15th, and deposited in the mail on said date for delivery to appellee. But, regardless of whether it was countersigned on that date or at a later date, we are of the opinion that, by the plain provision of the policy and the note, the policy stood suspended from February 1, 1927, until the installment due on that date was paid. The cash payment made on the premium at the time the application was taken, although one-fifth of the premium on the policy for five years, did not constitute a payment of the premium for one year's insurance, but only a partial payment of a premium on a five-year policy of insurance.

The undertaking of appellant in this case was not to insure appellee's property from year to year, but for a period of five years, on the condition that he pay one-fifth of the premium for five years in cash, and the balance at stated intervals mentioned in the note. Fire insurance policies frequently contain provisions to this effect, and the courts have almost unanimously sustained that construction we are now placing on the policy, which suspends liability thereon in case of and during default in the payment of any installment of premium. This court has heretofore held that provisions of this kind are valid and enforceable, and that, under such conditions, failure to pay a premium note, or a note given for a part of the premium when it is due, constitutes a complete defense to an action upon a policy to recover for a loss occurring while such premium note is overdue and unpaid.

In *American Ins. Co.* v. *Hornbarger*, 85 Ark. 337, 108 S. W. 213, Mr. Justice BATTLE, speaking for the court, said: "The effect of so much of the policy and of the notes given for the premium as provides that the policy shall be void during the time the notes for the premium, or any part thereof, shall remain unpaid after they become due and payable until they are fully paid, was to suspend the operation of the policy during the time the notes or either of them remained overdue and unpaid, and to relieve the insurer from any liability for any loss which may occur during the continuance of the default." The cases of *Jefferson Mutual Ins. Co.* v. *Murry*, 74 Ark. 507, 86 S. W. 813, and *Fidelity Mutual Ins. Co.* v. *Bussell*, 75 Ark. 25, 86 S. W. 814, are cited in support of the above declaration.

In the Jefferson Mutual case cited by Mr. Justice BATTLE it was held, quoting the syllabus: "Where a policy of fire insurance stipulated that it should be void during the time the policy note, or any part thereof, should remain unpaid after becoming due, payment of such note after default revives the policy and makes it take effect from the time of payment, but the insurer is relieved from liability for any loss occurring during the continuance of the default."

In the Fidelity Mutual case, above cited, it was held that, under provisions in policy and note heretofore discussed, failure to pay the note as stipulated avoids the policy, and further holds that, if the application on which the policy is based or the policy contains a provision that a local agent cannot waive a forfeiture for non-payment of the premium, such local agent has no power to extend the time of the payment of the premium note, nor to waive the forfeiture for failure to pay it.

*McCullough* v. *Home Insurance Co.*, 118 Tenn. 263, 100 S. W. 104, 12 Ann. Cas. 626, is a case directly in point with the case at bar. In that case it was held that "a policy of fire insurance, issued on March 19 for a period of five years, for a stated premium, one-fifth of which is paid in cash and the remainder of which, according to

stipulation, is to be paid in four annual installments, due upon the first day of January of each succeeding year, with a provision that the company shall not be liable for any loss that may occur while any installment of the premium remains past due and unpaid, cannot be construed as a yearly contract which the payment of each installment of the premium keeps in force for a full year ending March 19, but is for an entire term of five years, and becomes immediately suspended by failure to pay an installment of premium on January 1.''

A great many cases are cited in support thereof in the note to the above case in 12 Ann. Cas., and among them is *Blackerby* v. *Continental Ins. Co.*, 83 Ky. 574, where the court said:

''It is well settled * * * that a condition like this one in a policy of insurance is valid, and that, in case of a breach of it by the insured, without a valid excuse, the obligation of the insurer is at an end, although the premium note of the insured remains binding upon him. The parties have the right to make their own contract, and to fix its terms and conditions; and, unless they are illegal or in violation of public policy, they will be upheld. In this instance they could have agreed upon a higher rate of premium; and they had an equal right to agree that the period of time to be covered by the insurance should become shorter upon some contingency, without altering the amount of the premium; especially would this be reasonable and just as to any contingency which the legal duty of the insured requires him to, and which he can, prevent. Any other rule would require the insurer to carry the risk, although the insured was at the same time violating the contract without excuse; and to require the company to waive its right to the premium, before it could insist upon a release from the risk, brought about by the failure of the insured to perform his part of a contract executory upon both sides, would establish a rule in favor of the latter resting upon his own default and a violation of his legal duty. If he pays the entire premium in advance, or fails to pay it *ad diem,* or at

maturity, as he has contracted, the law will not relieve him when the forfeiture of the policy arises from his own neglect. It is vital to the existence of fire insurance companies, and the interest of both the stockholders and policyholders, that the patrons should be prompt in the payment of their premiums; and, upon the other hand, the insurer should be held to a just performance of the contract; but if the insured, without sufficient excuse, has failed to comply with the conditions which constituted the consideration for the undertaking of the company, his complaint, in case of a subsequent loss, cannot be heard. If he neglects to pay his note without a valid excuse, it is a violation of his plain duty, and if a subsequent loss occurs, he has no right, upon any legal or equitable principle, to reimbursement.''

Such was the effect of the holding in *Hartford Fire Ins. Co. v. Jones,* 215 Ala. 488, 110 So. 30, citing *Lett v. Liverpool & London & Globe Co.,* 213 Ala. 448, 105 So. 553; *Home Insurance Co. of New York v. McFarland,* 142 Miss. 558, 107 So. 754. The latter case cites *Robinson v. Insurance Co.,* 51 Ark. 441, 11 S. W. 686.

In 3rd Cooley's Briefs on Insurance, 2 ed., 2903, it is said: ''Policies of insurance usually contain a condition that a failure to pay any premium or note given therefor when due, or within a specified time thereafter, shall render the policy void. Such condition is reasonable and valid, and consequently binding on the insured.'' Citing a large number of cases. The cases cited on this and subsequent pages of this work support the principle heretofore stated.

Appellee cites a number of life insurance cases to support the theory on which the case was submitted to the jury, but we do not think these life insurance cases are in point in a case of this kind, and we find a very substantial division of authorities, even in the life insurance cases, but no substantial division of authority on fire insurance cases. It is not contended by appellee, in his brief here, that the local agent at Prescott had authority to waive the payment of the premium when due, or to

waive a forfeiture of the policy for nonpayment. Indeed, we think he had no such power, and this too is supported by the authorities heretofore cited.

Having reached the conclusion that the policy was suspended by failure to pay the installment premium on February 1, 1927, according to the tenor of the note, it follows that there was no liability for a loss occurring on February 16, with the note still in default. The judgment will therefore be reversed, and the cause dismissed.