NATIONAL UNION FIRE INSURANCE COMPANY *v.* WANT.

Opinion delivered May 26, 1930.

*McCormick & Graves,* for appellant.

*D. F. Taylor, Jr., D. F. Taylor, Sr., James G. Coston* and *J. T. Coston,* for appellee.

SMITH, J. On March 8, 1926, the appellant fire insurance company, hereinafter referred to as the company, issued to appellee a policy of fire insurance in the sum of $3,000, for a period of three years, covering his residence and household goods. The policy was issued in consideration of a premium of $131.25, of which $43.75 was paid in cash and the balance evidenced by "an installment note of $87.50, due and payable as follows: $43.75 on the 1st days of March, 1927-1928." The policy was introduced in evidence, but the note was not, and it does not appear of record whether the note bore interest, and, if so, at what rate. The policy contained the following provision:

"PAYMENT OF NOTES OR INSTALLMENT FOR PREMIUM.

"It is understood and expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any installment of the installment note given for premium upon the policy remains past due and unpaid or while any single payment, promissory note (acknowledged as cash or otherwise), given for the whole or any portion of the premium remains past due and unpaid."

The premium installment due March 1, 1927, was paid by a check for $46.33, which included the annual installment of $43.75 and $2.58, the interest thereon for one year.

The company sent the insured a notice on February 1, 1928, calling attention to the fact that the third and

final annual premium would become due March 1, 1928. This notice contained the following language:

"This note, by its terms and conditions, is due and payable at the Southwest Service Office of this company in Memphis, Tenn. Please remit by postal money order or bank draft payable to the order of the company."

The insured did not remit as directed, but on March 2, 1928, handed to D. A. Fisher, Incorporated, of Memphis, Tenn., the agent of the insurance company in that city, his personal check, on the Bank of Tyronza, for $43.75. This check was indorsed by the agent and sent to the home office of the company in Pittsburgh, Pennsylvania, and, on March 8, 1928, the home office wrote to insured the following letter:

"We have received your check in the amount of $43.75, paying your installment on policy No. 5159. However we note that you have overlooked the $5.25 interest, and we ask that you allow this amount to come forward by return mail."

At the time the check was delivered to the Memphis office of the insurance company the insured had to his credit in the Bank of Tyronza a sum sufficient to pay the check, and if it had been deposited that day or within the next few days thereafter by the Memphis office for collection, instead of being sent to Pittsburgh, Pennsylvania, it would, in due course, have been presented to the Tyronza bank while the insured had on deposit sufficient funds to pay it, and it would have been paid. The ledger sheet of the insured's account at the Bank of Tyronza for the month of March and a part of April was introduced in evidence, and it appeared therefrom that the account fluctuated, there being days when the account exceeded the check and other days when it did not.

The insurance company deposited the check with its bank in Pittsburgh on March 9, and in due course it was presented to the Bank of Tyronza for payment, but payment was refused for want of sufficient funds.

On March 21 the company wrote and mailed from Pittsburgh the following letter:

"Your check in the amount of $43.75 payable to D. A. Fisher, and in turn indorsed to us, has been returned by the bank marked 'not sufficient funds.' In order to reinstate your policy, it will be necessary for you to forward to us cashier's check or a post office money order in the amount of $43.75. We attach an envelope for your convenience."

On March 24 the insured answered this letter as follows:

"In regard to your letter of March 21, 1928, which I have in hand, would like to say that the check that was tendered to D. A. Fisher, Inc., was perfectly good, and that it was returned for reasons unknown to me. I wish that you would kindly present same again for payment, and I am sure that it will be honored upon presentation. I also have your letter of March 8, 1928, in regard to interest on my note. This is covered by the enclosed check."

Upon receipt of this letter last quoted the check for $43.75 and the one for $5.25 were deposited in Pittsburgh, and the larger check was again returned unpaid by the bank upon which it was drawn on account of insufficient funds, while the smaller check was paid.

The insured property was destroyed by a fire on April 18, 1928, and the insured immediately demanded payment from the insurance company. Without offering to return the check which had been twice dishonored or the $5.25 check which had been collected, the insurance company, on June 11, 1928, wrote the insured the following letter:

"We are interested to know if you have been successful in establishing the fact that an error was made by the bank or the National Union Fire Insurance Company in not clearing your check which was given for the installment premium. We have not heard from you in sometime, and, if we can assist you in any way, please call on us."

828

Upon this testimony there was a verdict by a jury and a judgment for the face of the policy, with interest, penalty, costs and attorney's fees, from which is this appeal.

The provision of the policy suspending liability thereunder, set out above, while the premium remained unpaid, is valid and must be given effect. Such provisions have been upheld by this court in a number of cases, three of which are very recent. *Yarnell* v. *Mechanics' Ins. Co.*, 178 Ark. 1106, 13 S. W. (2) 303; *American Ins. Co.* v. *Austin,* 178 Ark. 566, 11 S. W. ('2d) 475.

It is insisted, however, that the premium has been paid, and that, if there was a forfeiture, there has also been a waiver thereof. Appellee insists that the check for $43.75 was accepted by the insurance company in payment of the premium, and not merely for collection, and that such is the effect of the letter set out above acknowledging its receipt.

We think the correspondence between the parties, set out above, shows clearly that such was not the case. It is admitted that the check has never been paid, although twice presented for payment, and upon its first dishonor the company notified the insured that his check had been dishonored by the bank, and that his policy stood suspended and could only be reinstated by sending a cashier's check or money order. Certainly, the insured had no right to assume, in view of this letter and the additional fact that the same check was dishonored a second time, that the company was holding the check as payment of the premium.

Dealing with a very similar question the Court of Appeals of Kentucky in the case of *Ratliff* v. *St. Paul Fire & Marine Ins. Co.*, 207 Ky. 492, 269 S. W. 546, said: "We cannot see how the case is any different than it would have been if appellant had paid the amount of the premium in counterfeit bills."

The case of *Veal* v. *Security Mutual Life Ins. Co.*, 6 Ga. App. 721, 65 S. E. 714, is one upon which appellee relies for the affirmance of the judgment upon another ground. In that case the insurance company had issued a premium receipt upon receiving a check, and it was contended that the acceptance of the check and the issuance of the receipt constituted payment, but the Court of Appeals of Georgia said: "* * * For in the case of an existing indebtedness checks are not payment until they themselves are paid, unless there is an agreement otherwise. * * * We would not be understood as saying that, if a policyholder sends a check in payment of his premium, and the company merely sends the check for collection, a payment of the premium results from this alone if the check is dishonored. Commercial usage is to the contrary." This is stated, in the chapter on Payment in 21 R. C. L. page 60, to be the general rule, and the numerous annotated cases cited in the note to that text fully sustain that statement of the law.

The chief insistence for the affirmance of the judgment of the court below is that, if there was a forfeiture, there was also a waiver resulting from "the demand of the defendant, two or three weeks after the premium was due on Want, the insured, for $5.25 interest, and the retention of the check for $43.75, without offering to return it or letting him know that payment was refused the second time, or declaring a forfeiture, constituted a course of conduct amounting to a waiver of the forfeiture."

We think there is no evidence in the record to support the finding that the insurance company had accepted this twice dishonored check as payment of the note or in satisfaction of the insurance premium. It was run through the clearing house the second time, because the insured requested that this be done and represented that an error had been made by the bank upon which it was drawn, and that otherwise the check would have been paid upon its first presentation. This representation

proved to be false upon the second presentation of the check. It does not appear when the check was deposited in Pittsburgh the second time, but it could not have been done until after the receipt of the insured's letter dated March 24 asking that this be done. It appears, from the testimony, that about eleven days was required for the check to clear on its first remittance and deposit, and no doubt the same length of time was required on its second remittance and deposit, and the fire occurred on the 18th of April.

The insurance company has done nothing since the fire to mislead the insured or to waive the suspension, and it has made no effort to collect the check since the fire, and its only action has been to write the letter of June 11, 1928, set out above, after notice of the loss had been received, in which it inquired whether the insured had "been successful in establishing the fact that an error was made by the bank or the National Union Fire Insurance Company in not clearing your check which was given for the installment premium," and it is not contended even yet that such an error was made.

Appellee very strongly relies upon the case of *Veal* v. *Security Mut. Life Ins. Co., supra,* as sustaining his contention that the retention of the check was a waiver of the right to declare the policy forfeited.

The point decided in that case is indicated by the first headnote, which reads as follows: "If the holder of a policy of life insurance sends to the company on the day the premium is due a check in payment thereof, and, when the check is presented at bank, payment is refused because of lack of funds to the credit of the drawer, the company, although it has delivered the premium receipt to the insured, may, by taking the proper steps, repudiate the transaction for the legal fraud resulting from the insured's having sent a check without having in bank the funds to meet it, and may enforce a lapse of the policy for nonpayment of premium. But if the company, in such a case, after notice that the check has been dishonored,

retains it, and, instead of repudiating the transaction by returning the check and demanding back its receipt, insisted upon the insured's paying it after the date on which the policy would otherwise have lapsed, a waiver of the punctual payment of the premium in cash results. If the insurance company accepts and retains a note, check or other interest-bearing obligation for the premium, the policy shall not be held to be lapsed or forfeited for nonpayment of premium, even though the note or other obligation is not paid at maturity, unless there is an express provision in the policy providing that a failure to pay any such obligation at maturity shall result in a lapsing or a forfeiture of the insurance. *Prima facie* the liability to pay interest is regarded as the only penalty for failure to meet at maturity an ordinary indebtedness.''

It is obvious that there are two very material distinctions between that case and this. The first is that the insurance company in the instant case deposited the check the second time only because of the representation that an error had been made which had prevented its payment, when such was not the fact, and the company has since made no further effort to collect the check, and has done nothing to lead the insured to believe that it was holding the check in satisfaction of the premium. The second distinction between the cases is that the policy here sued on, unlike the one in the Veal case, contained the express provision that a failure to pay at maturity should result in a lapsing or a forfeiture of the insurance.

As to the item of $5.25 paid as interest it may be said that this was paid to and has been retained by the company. The annual installments of the premium were payable in advance, but it does not appear whether the note evidencing the annual installments bore interest or not. Such evidence as there is on the subject indicates that it did. When the insured paid the second installment of the premium he paid a year's interest. If the note bore interest, then interest for two years was due

when the third installment of the premium fell due, and the $5.25 check paid only this interest and paid no part of the third year's premium. But appellee insists that the note did not bear interest, and that the $5.25 must therefore be credited on the third year's premium, as nothing else was due the company, and that when so credited it suffices to pay the proportionate part of the premium to a time two days later than the date of the fire.

We think appellee is correct in this contention if the note did not bear interest, for it is the law that, where a part payment is made and accepted on a premium which amounts to more than the premium then earned, and a loss occurs before the whole of the premium paid has been earned, there is a waiver of any forfeiture on account of a failure to pay the whole premium. This is an application of the simple principle that it would be inequitable to permit the insurer to receive and retain the insured's money without giving him credit for it, and if credit is given it must be applied to extend the insurance for such proportionate time as the money received and held would pay. Such is the effect of the following cases: *Continental Casualty Co.* v. *Baker, ante* p. 156; *Security Life Ins. Co.* v. *Matthews,* 178 Ark. 775, 12 S. W. (2d) 865; *Missouri State Life Ins. Co.* v. *Miller,* 163 Ark. 480, 260 S. W. 705; *Mutual Life Ins. Co.* v. *Henley,* 125 Ark. 372, 188 S. W. 829; *American Nat. Ins. Co.* v. *Mooney,* 111 Ark. 514, 164 S. W. 276.

We conclude, therefore, that the judgment of the court below must be reversed, and upon the trial anew the cause will be dismissed for failure to pay the premium, unless it be made to appear that the premium note did not bear interest, in which event the verdict will be directed in favor of the insured, as the undisputed testimony would show in that event that the insurance company had received a sufficient portion of the premium to carry the insurance to a day beyond the date of the fire.

HUMPHREYS and MEHAFFY, JJ., dissent.