# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No.  97-3394

_____

| | |
|---|---|
| Generali/US Branch, | * |
| | * |
|         Appellee, | * |
| | *   Appeal from the United States |
|   v. | *   District Court for the |
| | *   Eastern District of Arkansas. |
| Joanna Bierman; Brian Bierman; | * |
| Randall J. Hunt; Paula Hunt, | * |
| | * |
|         Appellants. | * |

_____

Submitted:  February 10, 1998
Filed:  August 14, 1998

_____

Before  RICHARD  S.  ARNOLD,[1]  Chief  Judge,  HANSEN,  Circuit  Judge,  and
     LIMBAUGH,[2] District Judge.

_____

HANSEN, Circuit Judge.

---

[1]The Honorable Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.  He has been succeeded by the Honorable Pasco M. Bowman II.

[2]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

On November 4, 1994, Joanna and Brian Bierman purchased an auto insurance policy from Generali/US Branch (Generali). The policy provided liability insurance for bodily injury and property damage caused by either of the Biermans while driving either of the Biermans' two automobiles. On January 17, 1995, Joanna Bierman was involved in a car accident in which Randall and Paula Hunt were critically injured. When the Hunts sued Joanna Bierman for their injuries, Generali denied coverage and refused to defend the action. The Hunts obtained a $545,194.12 default judgment against Joanna Bierman on December 5, 1995.

The Biermans sued Generali in the Circuit Court of Pulaski County, Arkansas, alleging bad faith and breach of contract. Generali removed the state action to federal district court and brought a separate action naming the Biermans and Hunts as defendants and seeking a declaration that the Biermans were not insured by Generali at the time of the accident. The Biermans and Hunts appeal from the district court's grant of summary judgment for Generali and from the denial of their own summary judgment motion in this diversity action. We reverse and remand.

## I.

"We review the district court's grant of summary judgment de novo, applying the same standards as did the district court." United of Omaha v. Business Men's Assur. Co. of America, 104 F.3d 1034, 1036-37 (8th Cir. 1997). We reverse unless "the evidence, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. at 1037.

We must decide whether or not the policy which the Biermans purchased from Generali on November 4, 1994, was in effect when Joanna Bierman's accident occurred on January 17, 1995. The terms of the Biermans' liability policy (PDAR 16336) are listed in a form captioned "Original Policy Declarations." (Appellants' App. at 230).

The declarations provide that the policy premium was $446.00, and that the Biermans were additionally required to pay a $15.00 policy fee. The amount of "Other Fees" is listed as $0.00, and the "Total Charges" are listed as $461.00 ($446.00 +$15.00). (Id.). The policy began on November 4, 1994, and had a term of 181 days, terminating at 12:01 a.m. on May 4, 1995.

The Biermans opted to pay the cost of the policy in installments rather than in one lump sum. Accordingly, they paid $200.00 down. On December 14, 1994, Generali sent the Biermans an invoice telling them that they owed an additional payment of $87.60 on the policy, including a previously undisclosed $5.00 installment fee. On January 3, 1995, Generali sent the Biermans a second notice requesting remittance of $87.60 and advising the Biermans that their coverage would terminate at 12:01 a.m. on January 16, 1995, if such payment had not been received. By the time Mrs. Bierman's check arrived after the payment deadline established by Generali, Generali had already terminated the insurance contract on January 16, 1995.

Although Generali terminated the contract, the Biermans obtained pro rata coverage for the percentage of the policy period corresponding to the percentage of the premium which they paid in their down payment, because Arkansas law provides:

> [W]here a part payment is made and accepted on a premium which amounts to more than the premium then earned, and a loss occurs before the whole of the premium paid has been earned, there is a waiver of any forfeiture on account of a failure to pay the whole premium. This is an application of the simple principle that it would be inequitable to permit the insurer to receive and retain the insured's money without giving him credit for it, and if credit is given it must be applied to extend the insurance for such proportionate time as the money received and held would pay.

<u>Equity Fire & Cas. Co. v. Needham</u>, 912 S.W.2d 926, 929 (Ark. 1996) (quoting <u>National Union Fire Ins. Co. v. Want</u>, 28 S.W.2d 63, 66 (Ark. 1930)).

Crucial to the present case is a determination of what portion of the Biermans' down payment actually applied to the policy premium. The $15.00 policy fee, fully disclosed on the declarations page, was subtracted from the $200.00 down payment, leaving $185.00. Because no additional fees had been disclosed or assessed at the time the Biermans made their down payment, the Biermans claim that all of the remaining $185.00 was allocated toward the premium, providing just over 75 days of coverage. (Appellant's Br. at 5.) Because the accident occurred on day 75, they contend that their down payment provided sufficient funds for coverage on that date. <u>Id.</u>

Generali contends that $5.00 of the $185.00 was properly used to cover a subsequently assessed, previously undisclosed "installment fee." Under this theory, the Biermans had only paid $180.00 against the premium at the time of the accident. Because $180.00 only buys approximately 73 days of coverage, Generali argues that no coverage existed on the day of the accident.

II.

Our review of the record convinces us that Generali did not and could not retroactively deduct a $5.00 installment fee from the Biermans' down payment. The initial invoice sent to the Biermans makes clear that the $5.00 installment fee was not, in fact, deducted from the down payment, but rather assessed against the Biermans, who were asked to remit $5.00 to cover the fee along with their first installment payment. The invoice provided as follows:

| | |
|---|---|
| Past Due: | 6.60 - |
| Current Due: | 89.20 |
| Installment Fee: | 5.00 |
| Pay Balance Due: | 87.60 |

(Id. at 235).

The invoice indicates that the "Current Due" amount is $89.20, which represents a 1/5 installment payment toward the total $446.00 premium. Yet, Generali directed the Biermans to pay a balance due of only $87.60. This figure of $87.60 is explained as follows: The "Past Due" entry represents a prepayment which could only have resulted from the Biermans' down payment. The exact amount of this prepayment, $6.60, logically results when the $185.00 down payment is credited as two of the five 1/5 installment payments ($89.20 + $89.20 = $178.40). Subtracting the sum of two installment payments from the $185.00 down payment ($185.00 - $178.40) leaves exactly $6.60 left over (the "Past Due" credit). Accordingly, it is clear that this $6.60 represents a portion of the previously paid down payment. When that $6.60 credit is deducted from the "Current Due" amount of $89.20, we see that the actual amount of premium which was due was $82.60. The Biermans were asked to remit $82.60 in premium in addition to $5.00 to cover the installment fee, resulting in a total bill of $87.60. Because Generali requested that the Biermans remit $5.00 to cover the installment fee, it is clear that Generali did not actually deduct $5.00 from the down payment to cover this fee.

Moreover, Generali would have been powerless to deduct this fee from the Biermans' initial $185.00 premium payment, even if it had in fact attempted to do so. As discussed above, Arkansas law provides that unearned premium payments must be applied to extend the insurance coverage. See Needham, 912 S.W.2d at 929 ("it would be inequitable to permit the insurer to receive and retain the insured's money without giving him credit for it, and if credit is given it must be applied to extend the insurance

for such proportionate time as the money received and held would pay"). Because the entire $185.00 initial premium payment, including the $6.60 designated by Generali as a past due credit, had been "made and accepted on a premium" and thereby allocated to premium by operation of Arkansas law, id., Generali was powerless to deduct the subsequently assessed $5.00 installment fee from the $185.00 premium partial payment.

Finally, it does not appear that Generali had authority under the contract to charge any installment fees. The declarations provided that there were no fees other than the $15.00 policy fee (Appellant's App. at 230 ("Other Fees" set at "$0.00")), and there is no evidence that the Biermans were ever informed that any additional fees would be assessed, much less deducted from their premium down payment. It would be grossly unfair to allow an insurer to evade its obligations by unilaterally deducting undisclosed and unauthorized fees from a policyholder's initial premium payment. The fact that this may be Generali's underwriting policy does not give Generali the power to impose it unilaterally and without notice and agreement.

In short, despite Generali's unilateral attempt to retroactively assess a previously undisclosed and unagreed-upon installment fee, the undisputed facts in the record demonstrate that this fee was unauthorized, undisclosed, and assessed long after the premium down payment was made. We hold that Generali did not and could not retroactively reduce the Biermans' initial $185.00 premium contribution to cover this undisclosed and unauthorized fee. As noted above, the $185.00 down payment represented approximately 41.5% of the total premium and compensated Generali for 75.1 of the 181 days of the policy's term. Therefore, the Biermans benefited from liability coverage from Generali for 75.1 days, beginning on November 4, 1994, and terminating on the morning of January 18, 1995—the day after the accident. The invoice which stated that the Biermans' coverage would terminate at 12:01 a.m. on January 16, 1995, if payment was not made by the deadline established by Generali was simply in error, because the Biermans had already paid for coverage extending into

-6-

the morning of January 18, and Generali did not have the power to terminate its coverage until such time. We therefore hold, based on the undisputed facts in the record, that coverage existed for the Biermans on the day of the accident, January 17, 1995, under policy PDAR-16336.

III.

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.