**MECHANIC'S TOOL SALES, INC.,**
Plaintiff-Respondent-Appellant,

v.

**FEDERATED MUTUAL INSURANCE COMPANY,**
Defendant-Appellant-Respondent.

**Nos. KCD 29207 and 29248.**

Missouri Court of Appeals,
Kansas City District.

Feb. 27, 1978.

Motion for Rehearing and/or Transfer
Denied April 3, 1978.

Carson, Monaco, Coil & Riley, P. C., Ronald R. McMillin, Jefferson City, for Mechanic's Tool Sales, Inc.

Hendren & Andrae, Kelly Pool, Jefferson City, for Federated Mut. Ins. Co.

Before WELBORN, Special Judge Presiding, and PRITCHARD, J., and HIGGINS, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Action on insurance policy by Mechanic's Tool Sales, Inc., to recover damages for loss of property by theft and 10% additional damages for vexatious delay and for attorney's fees. Judgment following trial to the court was for plaintiff for $7,000 damages for loss of property.

Appeal (29,207) by Federated Mutual Insurance Company contending: (I) Plaintiff's loss occurred while the property was

in care, custody or control of salesmen with recovery limited by the policy to $4,000; (II) The loss did not occur while the property was in transit and, if the persons in care, custody or control of same were not salesmen, recovery is limited to $2,000. Appeal (29,248) by Mechanic's contending: (I) Neither person in care, custody or control of property was a salesman and plaintiff is entitled to $10,000; (II) Vexatious delay penalties should have been awarded because defendant had no reasonable basis for denial of plaintiff's claim.

The contentions present a question of the extent of liability under undisputed facts. Affirmed.

Mechanic's Tool Sales, Inc., Cuba, Missouri, is a family business with all stock owned by Edward Shapiro, his son Bruce, and their wives, engaged in the sale of mechanics' tools.

Sales are made to "wagon jobbers" or route salesmen who in turn sell at retail to automobile supply houses and garages in Missouri and Illinois. Sales are made from special walk-in vans where merchandise is displayed on racks, and prospective purchasers enter the van to select the merchandise they wish to buy. Plaintiff owned seven to nine vans, all insured under the policy in issue.

Salesmen retain part of the purchase price, the percentage depending upon whether the salesman secures his own financing or is financed by plaintiff. Salesmen are not on the company's payroll; they manage their individual businesses and pay their own withholding tax. Plaintiff established salesmen's territories. Some salesmen leased vans from plaintiff.

On November 20, 1973, two of plaintiff's vans were stolen while parked overnight at a motel in St. Louis. One van contained merchandise valued at $17,621.88; the other contained merchandise valued at $10,931.08. The vans were under operation by Bruce Shapiro, plaintiff's vice president, and Richard Crossman, its route supervisor, who, for two weeks, had been servicing two routes upon which salesmen had discontinued their relationship with plaintiff. "Servicing" a route consisted of collection of regular credit payments to maintain plaintiff's cash flow, selling tools, maintaining service on previous sales to maintain customer contact during search for a replacement salesman, and generally doing the things done by regular salesmen. They spent evenings interviewing prospective replacement salesmen.

Both Mr. Shapiro and Mr. Crossman occasionally and temporarily serviced routes left vacant by a terminated salesman. Mr. Shapiro was ordinarily involved in company management; Mr. Crossman was generally involved in selection of salesmen and generation of sales in all the company's territories. Neither received sales commissions as part of their compensation.

Defendant's policy provided:

"II. LIMITS OF LIABILITY

"Subject to the provisions with respect to the Company's percentage of the total of the limits of liability for all contributing insurance, coverage under this form applies to each of the following for which a limit of liability is specified.

" *  *  *

"B. Property at locations not owned, leased, operated or regularly used by the insured, except property covered under *  *  * C.

"$10,000 in the aggregate at all such locations, not to exceed $1000 at any one location *  *  *.

"C. Property in the following situations:

"1. $5000 on property in transit (other than property in the care, custody or control of salesmen) on any one vehicle owned, operated or leased by the insured.

"2. $2000 on property in the care, custody or control of any salesman away from the insured's premises *  *  *."

▮ The court, in arriving at its judgment for plaintiff for $7,000, necessarily found that either Bruce Shapiro or Richard Crossman was plaintiff's salesman and the other was not; and that plaintiff's loss oc-

curred while its property was in transit. Such findings and judgment are to be sustained unless there is no substantial evidence to support them, unless they are against the weight of the evidence, or unless they erroneously declare or apply the law. Rule 73.01, as construed, *Murphy v. Carron*, 536 S.W.2d 30, 32[1–5] (Mo. banc 1976).

 The evidence shows that Mr. Shapiro and Mr. Crossman were, in many respects, similarly engaged on behalf of plaintiff, including sales, at the time of its losses. There were, however, notable differences. The losses were from two separate vans, one in the care, custody and control of Mr. Shapiro, an executive officer of plaintiff, temporarily involved with continuity of sales, the other in the care, custody and control of Mr. Crossman, an employee of plaintiff responsible for sales. The policy places a greater risk on property in custody of salesmen, and does not define "salesman," in which case the distinction permitted the court to determine from extrinsic evidence that Mr. Shapiro was not, and that Mr. Crossman was, a salesman in custody of plaintiff's property. *Cf. Cann v. M & B Drilling Co.*, 480 S.W.2d 81, 86 (Mo.App. 1972), cited under Section 409.401, V.A.M.S., which distinguishes executive officers from "salesmen" for purposes of the Missouri securities law. In the circumstances, defendant's liability was properly calculated at $5,000 for the loss from Mr. Shapiro's van and $2,000 for the loss from Mr. Crossman's van.

The evidence shows that the property lost through the theft of plaintiff's vans was property that was loaded in the vans at Cuba, there to remain until delivered or sold to a customer on a sales route or returned to plaintiff's warehouse in Cuba. Such permitted the court to determine that the property in Mr. Shapiro's van was "in transit" in satisfaction of policy situation II, C, 1. See *Rupp v. Hanover Fire Ins. Co.*, 311 S.W.2d 58 (Mo.App.1958), where a tank-truckload of gasoline was "in transit" until delivery had been completed which would not occur until the gasoline had been dis-

charged and the hose disconnected, and fire occurring when the truck was partially unloaded was covered by defendant's policy. *Cf. Whitehall Company, Ltd. v. New Hampshire Ins. Co.*, 361 Mass. 865, 281 N.E.2d 234 (1972), where shipment of merchandise stolen while at rest for two weeks at its ultimate destination was not "in transit" for purposes of insurance coverage; *Simons v. Niagara Fire Ins. Co.*, 398 S.W.2d 833 (Tex. Civ.App.1966), where insured's grain stored in third person's elevator and removed by truck by unauthorized persons was not "in transit"; and *San-Nap-Pak Mfg. Co. v. Firemen's Ins. Co.*, 47 N.Y.S.2d 542 (1944), where goods damaged by flood while loaded on insured's truck but in the warehouse on Saturday prior to delivery on Monday were "in storage" and not "in transit."

 This record demonstrates a genuine dispute and thus reasonable cause for defendant to require an adjudication in which case there is no error in the court's refusal to award damages for vexatious delay. *Whited v. Nat. Western Life Ins. Co.*, 526 S.W.2d 364, 369 (Mo.App.1975).

Judgment affirmed.

All concur.