### S91G0825. PROGRESSIVE PREFERRED INSURANCE COMPANY v. BROWN et al.
(413 SE2d 430)

FLETCHER, Justice.

We granted the writ of certiorari to consider whether an insurance company is compelled to comply with the cancellation provisions of OCGA § 33-24-45 when the insured has paid an insurance premium with a worthless check. The Court of Appeals held that the insured had coverage under a new policy that Progressive had not cancelled as the statute provides. See *Brown v. Progressive Preferred Ins. Co.,* 198 Ga. App. 599 (402 SE2d 303) (1991). Because we find that the parties intended to create a renewal contract, but the insured never paid any consideration for the policy, we reverse.

Progressive mailed a notice to Johnny Mack Brown on January 18, 1988, indicating the company's willingness to renew his automobile insurance, Policy Number 21-41-371-1. The notice stated, "Your policy will expire on 02/23/88. Payment must reach Progressive before 02/23/88 to keep your coverage in continuous effect through 08/23/88." The policy stated: "If you pay your premium, we, the Progressive Insurance Companies, agree to insure you. . . . Your failure to pay the required continuation or renewal premium means that you have declined our offer."

On February 23, 1988, Brown mailed Progressive a check for the minimum payment with the renewal notice. Two days later, Progressive mailed Brown a declarations page for Policy Number 21-41-371-2, which extended coverage from February 25, 1988 to August 25, 1988. Brown's bank dishonored his check for insufficient funds on March 2, 1988. Progressive's bank resubmitted the check for payment, but Brown's bank again dishonored the check for insufficient funds on March 11, 1988.

On March 17, 1988, Shirley Brown was in an automobile accident with Henry Hankey. When Mr. Brown reported the accident to his

insurance agency on March 20, Progressive denied the existence of coverage due to Brown's failure to pay the premium. Progressive received notice of the second dishonor on March 21, 1988 and the next day mailed Brown a notice that his coverage had lapsed for failure to pay the premium. Progressive then filed this declaratory judgment action against the Browns, Hankey, and U. S. Fidelity & Guaranty Company, Hankey's uninsured motorist carrier. The trial court granted Progressive's motion for summary judgment, and Brown and USF&G appealed.

1. An insurance contract is governed by the ordinary rules of construction and should be construed to ascertain the intention of the parties. *Golden v. Nat. Life &c. Ins. Co.*, 189 Ga. 79, 87 (5 SE2d 198) (1939); OCGA § 13-2-3. In discovering the intent of the parties, the whole instrument should be considered together, along with the surrounding circumstances. *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975). Whether a renewal creates a new contract, or extends the original contract, depends primarily on the intention of the parties. 43 AmJur2d 509, Insurance, § 443 (1982).

The circumstances indicate that Progressive and Brown intended the policy issued on February 25, 1988 to be a renewal of the policy expiring on February 23, 1988, and not a new policy. Progressive sent a "Renewal Notice" indicating its willingness to issue "Policy Number 02141371-2" on the same terms as Brown's existing policy. Brown mailed the bottom portion of the renewal notice along with his premium payment on the payment due date. On receiving Brown's check, Progressive mailed a declarations page that listed the same policy number as listed in the Renewal Notice.[1] The policy covered the same vehicles, persons, coverage, and deductibles as the previous policy; the only change was a slightly lower premium.

It was undisputed in the trial court that Brown and Progressive intended a renewal of his policy. Brown states in his affidavit that he mailed his check to keep his policy in effect for an additional six months until August 23, 1988. The parties stipulated that Progressive mailed the declarations page to "a renewal policy." Furthermore, the trial court found that Progressive "issued a declarations page on a renewal policy number 21-41-371-2," but Brown failed to pay the premium for "the renewal policy."

2. In holding that Progressive intended to issue a new policy, the Court of Appeals relied exclusively on OCGA § 33-24-45 (b) (2). See

[1] The policy number differed from Brown's previous policy numbers only in the last digit. Brown's first policy with Progressive was numbered 21413710; his second policy was numbered 21-41-371-1 and extended coverage from August 23, 1987 to February 23, 1987. The policy in this case apparently would have been the third that Progressive had issued to Brown, as the last digit of the policy number indicates.

*Brown*, 198 Ga. App. at 599 (402 SE2d at 303-304). Subsection (b) defines "renewal" as "a policy superseding at the end of the policy period a policy previously issued and delivered." Unlike the Court of Appeals, we find that the lapse of two days between the expiration of the existing policy and the issuance of another policy does not preclude the second policy from being a renewal contract. A renewal policy can begin on another date by agreement of the parties to the contract. See *Cochran v. Liberty Mut. Ins. Co.*, 258 Ga. 341 (368 SE2d 751) (1988) (considering whether renewal policy began six weeks prior to the expiration of the original policy).

3. Although the parties intended to renew Brown's policy, Progressive argues that the renewal did not take effect due to lack of consideration. "[A] check is not payment until itself paid unless explicitly taken with a contrary understanding." *Kersh v. Life &c. Ins. Co.*, 109 Ga. App. 793, 795 (137 SE2d 493) (1964). The "generally accepted rule" is:

"where a check is taken for an insurance premium, it will ordinarily be assumed that the acceptance was conditioned upon the check's being honored upon proper presentation, so that if payment is refused, and in the meantime the period in which payment could be made has elapsed, the insurer may declare the policy forfeited for nonpayment."

Id. at 796 (137 SE2d at 496), citing Annotation, *Receipt of Check for Insurance Premium as Preventing Forfeiture for Nonpayment*, 50 ALR2d 630, 639 (1956); see also M. Rhodes, Couch Cyclopedia of Insurance Law 2d § 39:44 (Rev. ed. 1985) (a check is a conditional payment even when the premium is overdue).

Brown counters that Progressive waived its right to treat the check as a conditional payment by resubmitting the dishonored check a second time for payment, citing *Veal v. Security Mut. Life Ins. Co.*, 6 Ga. App. 721 (65 SE 714) (1909). In *Veal*, the court stated:

if the company . . . after notice that the check has been dishonored, retains it, and, instead of repudiating the transaction by returning the check and demanding back its receipt, insists upon the insured's paying it after the date on which the policy would otherwise have lapsed, a waiver of the punctual payment of the premium in cash results.

Id. The court held the insurance company liable even though the insured paid the last premium with a dishonored check.

We find this case distinguishable from *Veal* where the life insurance policy had cash surrender value, was secured by a lien on the policy, and contained no provision making the insured's failure to pay

the check a ground of forfeiture. Moreover, the insurance company had written the insured after the first dishonor asking him to send money to cover the check and retained the check after it was dishonored a second time. No subsequent decision has found the insurance company waived its right to treat a premium check as a conditional payment. See *Liberty Nat. Life Ins. Co. v. Davis*, 146 Ga. App. 38, 39 (245 SE2d 316) (1978) (declining to hold that insurance company waived punctual payment of the premium by "mere retention" of the check after dishonor); *Kersh*, 109 Ga. App. at 796 (137 SE2d at 496) (finding company did not waive its right to insist on cash payment when the company could not inform the insured of the dishonored check due to his departure without a forwarding address); see also *Wall v. Mut. Life Ins. Co.*, 467 F2d 321, 326 (5th Cir. 1972) (concluding that insurance company was entitled to judgment under Georgia law if insured replaced a dishonored check with another check that was also dishonored).

Other states have refused to hold that an insurance company waives its right to treat a check as a conditional payment by presenting the same check two times for payment. See, e.g., *Johnson v. Dairyland Ins. Co.*, 398 S2d 317, 319 (Ala. Civ. App. 1981); *Nat. Union Fire Ins. Co. v. Want*, 181 Ark. 824 (28 SW2d 63, 64) (1930); *Hauter v. New York Property Ins. Underwriting Assn.*, 94 AD2d 696 (461 NYS2d 897, 898) (1983); *McCormick v. State Capital Life Ins. Co.*, 253 SC 544 (172 SE2d 308) (1970). The rationale for these decisions is that the insurance company should not suffer a penalty for giving the insured a second chance to have the payment collected before voiding the policy. See *Johnson*, 398 S2d at 319. Finding this rationale persuasive, we hold that an insurance company does not accept a premium check as absolute payment when it promptly presents a dishonored check a second time for collection. Accordingly, Progressive did not waive its right to treat Brown's check as a conditional payment by redepositing the check after its initial dishonor on March 2.

4. Despite the parties' intentions, Brown's policy was not renewed. Although Progressive presented the check two times for collection, Brown's bank dishonored the check both times for insufficient funds. Progressive repudiated the transaction after the second dishonor by notifying Brown that his bank had not honored his check, his policy had lapsed, and he could reapply for a new policy by completing an application and making a premium payment.

Because Brown never paid the required renewal premium, his policy expired on February 23, 1988. No written notice of cancellation or nonrenewal was required. See OCGA § 33-24-45 (f) (2) (3); *Smith v. Southeastern Fidelity Ins. Co.*, 171 Ga. App. 26, 27 (318 SE2d 708) (1984). Therefore, Brown did not have any coverage with Progressive

on March 17 when Mrs. Brown was involved in the automobile accident.

*Judgment reversed. Clarke, C. J., Weltner, P. J., Bell, Hunt and Benham, JJ., concur.*

DECIDED FEBRUARY 6, 1992.

*Jones, Cork & Miller, H. J. Strickland, Jr.,* for appellant.

*Trunnell & Associates, J. William Trunnell, Jr., Anderson, Walker & Reichert, Elton L. Wall, R. Harold McCard, Jr., Warren C. Grice, A Newell NeSmith,* for appellees.