**HARTFORD CASUALTY INSURANCE COMPANY and Hartford Accident and Indemnity Company, Plaintiffs,**

v.

**BANKER'S NOTE, INC., Defendant.**

No. 1:90–CV–2551–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 19, 1993.

Jon B. McPhail, McPhail & Marmur, Atlanta, GA, for plaintiffs.

Mark Thomas Dietrichs, Swift Currie McGhee & Hiers, Atlanta, GA, for defendant.

## ORDER

ROBERT H. HALL, Senior District Judge.

This case is before the Court on Defendant's Motion for Partial Summary Judgment [42], and Plaintiffs' Motion for Summary Judgment [44]. This Court has jurisdiction pursuant to 28 U.S.C. § 2201. The Court DENIES Defendant's motion, and GRANTS Plaintiffs' motion.

## BACKGROUND

### I. History.

Plaintiffs, Hartford Casualty Insurance Company and Hartford Accident and Indemnity Company, initiated this action seeking a declaratory judgment as to their liability to Defendant, Banker's Note, a Hartford policy

holder, on a claim for loss of property and loss of business income.

Defendant is a clothing retailer which purchases inventory in the Northeastern United States and overseas, and distributes it throughout the Southern United States from a facility located in Smyrna, Georgia. Beginning in 1985, the merchandise purchased from New York vendors and received at New York docks from overseas vendors was transported by independent freight carriers to a warehouse facility owned by Shallcross Express, Inc. ("Shallcross" or "the facility") in Kenilworth, New Jersey. At the facility, the merchandise was unloaded from the independent carriers, and later loaded onto Defendant's only trailer, which was hitched to Defendant's only tractor. A driver employed by Defendant then drove the merchandise to Georgia. The vendors generally pay for the freight from their factories and warehouses to Shallcross, and either ship the goods to Shallcross themselves or have Shallcross trucks pick them up and deliver them to the Shallcross warehouses. Deposition of Harold D. Cannon, II. (Defendant's Senior Vice-President), p. 27. While the goods are on Shallcross vehicles and while they are stored at the Shallcross warehouse, they are covered by Shallcross' cargo insurance policy. *Id.* at 79.

Under these circumstances, Defendant purchased property and business income insurance coverage from Plaintiffs. Defendant did not negotiate the coverage directly with Plaintiffs. All negotiations by both parties took place through an entity named Rollins Burdick Hunter ("RBH").

Shortly after acquiring the Policy, Defendant purchased a second trailer and began leaving one of its two trailers at Shallcross at all times. This allowed merchandise arriving from the various vendors to be transferred directly to and stored upon Defendant's unhitched trailer while Defendant's driver drove the tractor and the other trailer to Georgia. Cannon Deposition at 30–32, 42, 48. When Defendant's driver would return to Shallcross to retrieve the loaded trailer and transport it to Georgia, he would leave the other empty trailer behind to be loaded.

Between April 14 and April 16, 1990, Thieves broke into the Shallcross warehouse and stole a tractor belonging to Shallcross and one of Defendant's trailers which was loaded with merchandise. Defendant had left the trailer empty at Shallcross on April 10, 1990, and Shallcross loaded merchandise onto it over the next two days. Defendant's Motion, Exhibits 10–18. The theft took place between April 14 and 16. Not until April 17 did Defendant's driver return to Shallcross with the tractor to transport the merchandise to Georgia and learn of the theft.

## II. The Policy

Defendant's Policy covered it for loss of property under certain circumstances. The Cargo Coverage Form MS 00 42 04 89 states:

A. COVERAGE

We will pay for direct physical "loss" to Covered Property caused by any of the Covered Causes of Loss.

1. Covered Property, as used in this Coverage Form, means property you own or have sold, but not delivered, as described in the Schedule.

The Covered Property must be:

a. In your care;

b. In or on the transporting vehicles listed in the Schedule; and

c. In due course of transit.

The Policy also covered personal property located at any premises not described in the Declarations or Schedule accompanying the Policy up to $25,000. Special Property Coverage Form HM 30 10 09 88, section A,1,b(2).

Defendant also had coverage for loss of business income due to suspension of its operations resulting from property loss. The Business Income Coverage Form CP 00 30 07 88 states:

A. COVERAGE.

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a

vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.

The Policy defines the term "operations" as "your business activities occurring at the described premises", and the term "period of restoration" as:

> [T]he period of time that:
>
> a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

Form CP 00 30 07 88, section G.

The Shallcross facility is not named, described or listed by address in the policy's Declarations. *See* Policy Form IH 12 01 11 85; Cannon Deposition at 43. The policy also states that Plaintiffs will not pay for loss or damage caused by or resulting from "delay, loss of use or loss of market." Form HM 30 09 09 88, section B,2,b.

### III. The Coverage Dispute.

On August 3, 1990, Defendant submitted claims to Plaintiffs for losses, allegedly resulting from the theft, as follows: (1) $411,-516.68 in business income loss, and (2) $233,-279.05 in loss of merchandise. Plaintiffs rejected both claims, giving Defendant, instead, $25,000 (the maximum) for loss of "Personal Property at Other Premises". Plaintiffs subsequently brought this declaratory judgment action [1], and Defendant brought a counter-claim demanding the full amount of its claims plus bad faith penalties [2].

Defendant has moved for partial summary judgment, requesting the Court to declare that it is entitled to recover on the Policy because its goods were in due course of transit when stolen. Defendant's Motion, p. 2[42].

Plaintiffs have moved the Court to award it summary judgment, requesting the Court to declare that Defendant was not covered for its alleged loss of business income, that Defendant was not covered for the theft of its merchandise beyond $25,000, and that

Defendant is not entitled to any bad faith damages [44].

### DISCUSSION

I. Standard of Review for Summary Judgment Motion.

This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a mater of law." Fed.R.Civ.P. 56(c). In cases where the movant is the plaintiff, that party must demonstrate the absence of an issue of material fact with regard to *every* element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). In contrast, where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of her or his claim. *Id.* The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* However, it is not enough in most situations for the movant merely to point out to the court this absence of evidence. *Id.* at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Rather, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)).

■■■ Only after the movant meets its initial burden does any obligation on the part of the nonmovant arise. *Id.; Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Clark*, 929 F.2d at 608. Nevertheless, once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. *Celotex*, 477 U.S. at 325, 106

S.Ct. at 2554. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

 All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Rollins,* 833 F.2d at 1528.

## II. Application.

 In construing an insurance contract, courts are bound by the ordinary rules of contract law. *Progressive Preferred Ins. Co. v. Brown,* 261 Ga. 837, 838, 413 S.E.2d 430 (1992). Courts should consider the whole contract along with any surrounding circumstances in determining the intent of the parties. *Hercules Bumpers, Inc. v. First State Ins. Co.,* 863 F.2d 839, 841 (11th Cir. 1989); *Progressive Preferred,* 261 Ga. at 838, 413 S.E.2d 430. "The construction and interpretation of written contracts is a matter for the Court, and no jury question is raised unless after the application of all applicable rules of construction an ambiguity remains." *King v. Gilbert,* 445 F.Supp. 479, 483 (N.D.Ga.1977) (Hill, J.) (citing *Farm Supply*

*Co. of Albany v. Cook,* 116 Ga.App. 814, 816, 159 S.E.2d 128 (1967)), *aff'd,* 569 F.2d 398 (5th Cir.1978).

 In interpreting insurance contracts, Courts are to accept the "understanding of the average policyholder" as its "guide to the meaning of words." *Guest v. Horace Mann Ins. Co.,* 168 Ga.App. 714, 715, 310 S.E.2d 241 (1983) (citation omitted). A term or provision in an insurance contract is considered ambiguous if after application of the pertinent rules of construction there remain uncertainties as to which of two or more possible meanings represents the true intention of the parties. *Id.* Any ambiguities that are found must be construed strictly against the insurer. *Hercules Bumpers,* 863 F.2d at 841 (citing *Travelers Indem. Co. v. Whalley Constr. Co.,* 160 Ga.App. 438, 441, 287 S.E.2d 226 (1981)).

## A. Coverage for Loss of Business Income.

Plaintiffs assert that Defendant is not entitled to coverage for its alleged "loss of business income" because (1) the Shallcross premises were not named or described in the Policy's declarations, (2) Defendant incurred no "necessary suspension of operations", and (3) the alleged loss is excluded under the Policy as resulting from "delay, loss of use or loss of market." Plaintiffs direct the Court's attention to the language in Form CP 00 30 07 88 which states that a loss in business income is covered only if the business' operations are suspended "by direct physical loss of or damage to property *at the premises described in the Declarations.*" Section A (emphasis added). Plaintiffs then alert the Court to the fact that Defendant's Declarations do not include the Shallcross facility.

Defendant admits that Shallcross does not appear on any of the Policy's Declarations, but argues that Plaintiffs' and Defendant's true intention was for the Policy to provide coverage for business losses resulting from, among other things, thefts from Shallcross, and urges the Court to reform the contract to reflect this alleged intention. In explaining the absence of Shallcross from the Declarations, Defendant argues that the parties did not contemplate identifying on the Declarations locations not owned or leased by De-

**1572**

fendant (i.e., Shallcross). Defendant contends that the locations required to be identified in the Declarations were only those owned or leased by Defendant, as demonstrated by the fact that each of the various locations listed on the Declarations is so owned or leased.

To support its contention that the parties intended for the coverage to include those locations not owned or leased by Defendant, Defendant cites various witnesses' deposition testimonies. E.g. Deposition of Jennifer Johnson Antrobus (former Account Executive with RBH), pp. 173 (admitting that she did not ask Defendant to provide her with Shallcross' address); Deposition of Harold Cannon (Defendant's Senior Vice President), pp. 43–44 (stating that he thought merchandise on Defendant's trailers in Shallcross' warehouses was covered under Defendant's cargo insurance); *Id.* at Exhibit 13 (policy summary stating that Policy covers owner's goods on both of Defendant's trailers). Defendant asserts that RBH acted as a dual agent for both Plaintiffs and Defendant, and that Plaintiffs, therefore, are bound by RBH's representations. Thus, because RBH allegedly led Defendant to believe that it was covered with regard to merchandise in its trailers at Shallcross, the contract should be reformed to cover the stolen merchandise.

As a preliminary matter, the Court will rule on Defendant's contention that RBH acted as Plaintiffs' agent, thus binding Plaintiffs to the alleged mistakes and misrepresentations RBH made to Defendant. Defendant cites the deposition of Lillie Axelrod (RBH's Senior Vice President), and Defendant's Third–Party Complaint and RBH's Answer thereto as support for its assertion that RBH was acting as a "dual agent" for both Plaintiffs and Defendant in the course of procuring insurance for Defendant. Defendant's reference to its Third–Party Complaint and RBH's Answer is misguided as neither contains any suggestion that RBH was acting as a dual agent. As for Axelrod's

testimony, she states that RBH has "an agreement" with Plaintiffs, but does not elaborate, and does not state whether the agreement had any relation to RBH's work with Defendant. Axelrod Deposition, p. 24. In response, Plaintiffs alert the Court to Axelrod's testimony in which she states that RBH is an "insurance broker". *Id.* at 9. Plaintiffs also draw the Court's attention to Defendant's Third–Party Complaint against RBH in which Defendant alleges, and RBH admits, that RBH acted as Defendant's agent in procuring insurance coverage from Plaintiffs. Defendant's Third–Party Complaint, ¶ 16[12, 13]; RBH's Answer, ¶ 16[14].

In Georgia, although it is possible for an insurance broker to be a "dual agent," insurance brokers are normally agents for the insured and not the insurer. *Wright Body Works, Inc. v. Columbus Interstate Ins. Agency,* 233 Ga. 268, 269, 210 S.E.2d 801 (1974) (citation omitted); *National Property Owners Ins. Co. v. Wells,* 166 Ga.App. 281, 282, 304 S.E.2d 458 (1983) (citation omitted). Even, when an insurance broker does act as a dual agent for both the insurer and the insured, one of the principals may not hold the other liable for the tortious acts of the agent where the other principal does not directly engage in the tortious conduct. *Hodges v. Mayes,* 240 Ga. 643, 644, 242 S.E.2d 160 (1978).

The Court finds that Plaintiffs have presented evidence that RBH was Defendant's agent only, and Defendant has presented no significantly probative evidence that RBH was also Plaintiffs' agent. Even had Defendant produced some evidence of RBH's dual agency, Plaintiffs would not have been bound by RBH's alleged misrepresentations. *Id.*[1] Defendant, thus, has offered no reason for this Court to consider reforming the contract at issue.

The Court also finds that the Policy is clear in stating that the loss of business income coverage extends only to losses due

1. Although, in contrast to the *Hodges* case, Defendant in this case seeks to bind Plaintiffs to the content of RBH's alleged misrepresentations rather than hold Plaintiffs liable in tort for RBH's actions, the court in *Hodges* suggests that the logic behind its finding is applicable to the

case at hand. In *Hodges,* the court explains its finding by stating that "[the agent] owes no more duty to one [principal] than to the other; each of the principals is under an equal duty to supervise the agent and to protect his own interest...." *Id.*

to physical loss or damage at premises listed on the Declarations. Defendant offers no evidence that Plaintiffs, or the Policy on its face, instructed Defendant to list on the Declaration only those premises it owned or leased. Because both sides agree that the Shallcross facility is not listed on the Policy's Declarations, and because there is no evidence of fraud or undue influence on Plaintiffs' part, or of mutual mistake, the Court grants Plaintiffs summary judgment as to their contention that Defendant was not covered for loss of business income resulting from the theft at Shallcross.

### B. Coverage for Loss of Merchandise.

Plaintiffs have moved for summary judgment as to the Policy's coverage of Defendant's stolen merchandise. Plaintiffs assert that Defendant is not entitled to coverage for its loss of merchandise because (1) Defendant's Merchandise was not "in due course of transit", and (2) the merchandise was not "in Defendant's care." Defendant has also moved for summary judgment on this issue. Defendant contends that the merchandise clearly was in its care and in the due course of transit. Defendant also argues that if there is a question as to its contentions, it is because the Policy's provisions are ambiguous, therefore requiring that they be construed against Plaintiffs.

■■■ For merchandise to be covered under Defendant's Policy, it must have been in Defendant's care, on a vehicle listed in the Schedule, and in due course of transit. *See* Cargo Coverage Form MS 00 42 04 89, section A,1. Plaintiffs argue that the merchandise's transit would have begun when Defendant's trailer left Shallcross. Defendant argues that the transit began when the merchandise left its vendors on its way to Shallcross. There is nothing in the Policy that limits the definition of the term "transit" to those situations in which goods are both moving *and* in the policy-holder's care on a listed vehicle. Although the scope of coverage may be so limited, the definition of "transit" is not. Because the term "transit" is ambiguous in this regard, the Court, construing the term against the insurer, finds that the due

course of transit began when the merchandise left the vendors.

■■■ The question now becomes whether the merchandise was still "in due course of transit" when it was stolen from Shallcross. Neither the Court nor the parties found any Georgia case law on point. Ample case law exists, however, from other states.

Courts in other states have held that "[p]roperty is considered in transit when it is moving from one location to another. This does not exclude temporary stops, incidental delays, or some deviation from the planned route of travel." *Boonton Handbag Co., Inc. v. Home Ins. Co.*, 125 N.J.Super. 287, 310 A.2d 510, 511 (Div.1973) (citation omitted). *See also Dealers Dairy Prod. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 164 N.E.2d 745, 747 (1960). Central to determining whether a temporary stoppage removes goods from coverage is the purpose and duration of the stop. *Ore & Chem. Corp. v. Eagle Star Ins. Co.*, 489 F.2d 455, 457 (2nd Cir.1973) ("The true test is whether the goods, even though temporarily at rest, were still on their way, with the stoppage being *merely incidental* to the main purpose of delivery.") (emphasis added and citation omitted); *Franklin v. Washington Gen. Ins. Corp.*, 62 Misc.2d 965, 310 N.Y.S.2d 648, 650 (N.Y.Sup.Ct.1970) (finding that whether goods remained in transit "depends on the extent and purpose of the interruption in the context of the risk contemplated."). Examples of stops considered merely incidental to the main purpose of delivery are: Overnight rest (*Ore*, 489 F.2d at 457–58; *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Murphy*, 579 S.W.2d 58, 61 (Tex.Civ.App.1979)) and eating a meal (*J.G. Ries & Sons, Inc. v. Automobile Ins. Co. of Hartford, Connecticut*, 121 N.J.L. 493, 3 A.2d 610, 612 (1939) (in dicta)).

Courts have also commented on what is an acceptable length of stoppage before the course of transit is considered broken. Courts consistently allow overnight stops (so long as for a purpose considered incidental to the transit). *See, e.g., Dealers Dairy*, 164 N.E.2d at 747; *Home Ins. Co v. F & F Clothing Co.*, 250 Md. 534, 243 A.2d 572, 573, 575 (1968); *Mechanic's Tool Sales, Inc. v. Federated Mut. Ins. Co.*, 564 S.W.2d 557,

558, 559 (Mo.Ct.App.1978). But no court cited by either party has found coverage when a stop continued for two days or longer.

Courts have not limited acceptable stoppages only to those due to darkness or the drivers need to sleep, *see Ore,* 489 F.2d at 457–58 (urging some flexibility), but have commented that "[a]s an interruption or stoppage is protracted, its relation to the transit falls off sharply." *Id.*

When a prolonged delay is coupled with a reason for the delay that is other than incidental to the delivery, courts do not find coverage. For example, in *Dealers Dairy,* the insured's driver interrupted his transit, unhitched a trailer of machinery, and replaced it with a trailer of food for a rush delivery. 164 N.E.2d at 746–47. Returning to the place where he left the trailer of machinery, the driver found the trailer had been stolen. *Id.* at 747. The court ruled that the course of transit had been broken because the stoppage occurred so that the insured could devote its resources to other tasks for a few days. *Id.* ("the words, 'in transit' ... do not embrace a period of days during which, for the convenience of the insured and to divert the transporting conveyance to other business of the insured, the goods are unloaded and deposited on designated premises and left there at rest while the [tractor] departs and is used [for projects] foreign to the original shipment."). *See also Franklin,* 310 N.Y.S.2d at 650 (commenting that "a temporary interruption *for a purpose related the carriage itself* does not remove the property from transportation." [emphasis added] )

In the instant case the merchandise was on Defendant's trailer anywhere from two to six days before the theft occurred, and, but for the theft, the merchandise would have remained on the trailer for five to seven days before leaving Shallcross. The Court agrees with Plaintiffs that only stops that are inherent to a long journey (whether expected or unexpected) can be considered "incidental" to a delivery. The stop at Shallcross was not of this type. The stop occurred so that disparate shipments could be transferred from third-party trailers and consolidated on De-

fendant's trailer. This occurred on April 10, 11 and 12. The trailer, however, was scheduled to remain at Shallcross until April 17. This delay did not result from something inherent to moving that trailer from Shallcross to Georgia. Rather, the delay was planned in order to facilitate Defendant's other non-related scheduling needs by freeing up its only tractor. Had Defendant's tractor been readily available after the trailer was loaded, then Defendant could argue that the delay was due to factors incidental to that trailer's delivery. But because the tractor was being used for other purposes while the trailer was sitting at Shallcross, the delay is more accurately seen as being due to Defendant's other unrelated business needs. *Compare Dealers Dairy,* 164 N.E.2d at 746–47. The trailer was not left at Shallcross from April 12 until April 17 to facilitate its pickup. Instead, it was left there to facilitate Defendant's utilization of its sole tractor to perform separate tasks. Even if Defendant was not using its tractor for other tasks, the length of the trailer's delay at Shallcross was too long to have been merely incidental to or in facilitation of its pickup.

Defendant has not alerted the Court to any case in which a delay of this length has been treated as a covered period. Nor has the Court found any case in which a delay under these circumstances, even of a much shorter duration, has been treated as covered. The Court finds that there is no ambiguity as to whether the term "in due course of transit" extends to the facts in this case. The Court, therefore, finds that Defendant's loss is not covered by its Policy, and, accordingly, grants Plaintiffs' motion for summary judgment as to Defendant's claim for lost merchandise. Because the Court has found that neither of Defendant's claims is covered by its Policy, the Court also grants Plaintiffs' motion as to Defendant's demand for bad faith damages.

## CONCLUSION

The Court DENIES Defendant's Motion for Partial Summary Judgment and

GRANTS Plaintiffs' Motion for Summary Judgment.

So ORDERED.